Thank you for your time, Ross. Thank you very much. And Mr. Nelson, are you online? Hi, Mr. Nelson. Here you are. I think we've got this switched around. Okay. Mr. Moriarty? Good morning, Your Honors. We can't see you, so you're just a voice. There we go. Okay. So, Mr. Moriarty, if at any point you can't hear us or hear what Mr. Nelson is saying, just raise your hand and I'll try to spot you. Is that fair? Thank you, Your Honor. Great. Okay. So why don't we proceed. Mr. Nelson, good morning. Good morning, Your Honors, and may it please the Court. My name is James Nelson, and I represent defendants. I'd like to reserve two minutes for rebuttal. Okay. This Court should join the growing majority of near-unanimous circuits to hold that the Supreme Court's decision in Bristol-Myers applies to FLSA opt-in plaintiff's claims, so that plaintiffs whose claims arose out of state may not join an FLSA collective action against a non-consenting foreign defendant. First, Bristol-Myers confirmed that personal jurisdiction must be established for every claim asserted against a defendant, something this Court has long recognized. If a defendant is not at home in the foreign state, that means each plaintiff's claims must arise from the defendant's activities in the forum. So a key question for resolving this case is whether it involves a combination of many individual claims or just one representative claim. The FLSA answers that precise question. It says every opt-in plaintiff is a full-party plaintiff and that the act of opting in commences an individual action. Indeed, this Court has already held that FLSA collective actions are, quote, non-representative and thus bear little resemblance to Rule 23 class actions. The FLSA allows a species of joinder like the mass action in Bristol-Myers. It does not allow truly representative litigation. All six circuits, considering Bristol- Yeah, I guess two responses on that, Your Honor. First of all, it was the Supreme Court in Genesis Health Care that said this is a joinder mechanism and not representative, and this Court followed that. But the other thing I'll point out is actually in Bristol-Myers itself, the mass action was described as being brought on behalf of other plaintiffs in the California appellate court. So the language on behalf of has to be read in context. In the statutory context here, in the Portal to Portal Act, Congress actually removed the word representative from that very sentence that Your Honor just quoted. It said that it was a representative action. Congress removed the word. Right, it removed the representative action, but then it talks about by himself and other employees. So, you know, but I get the thrust was to say it's not representative action. Yes, Your Honor. And as I was saying, I think all six circuits that have resolved the Bristol-Myers question for FLSA have all agreed on this point, including the First Circuit. And actually, at least three of them cited this Court's decision in Scott in so holding. Second, in an attempt to escape this conclusion, plaintiffs argue that the Fourteenth Amendment does not apply to opt-in plaintiffs' claims because they need not independently serve process under Rule 4C. As the Third, Sixth, Seventh, Eighth, and Ninth Circuits have all held, that argument fails as well. Plaintiffs' argument fundamentally misunderstands the law governing personal jurisdiction in federal courts. In many cases, this Court has recognized the exercise of personal jurisdiction requires not only service of process, but also a statutory basis for personal jurisdiction that renders such service of process effective. Civil Rule 4K1 instructs this statutory authorization may arise under either federal or state law. A federal statute authorizes personal jurisdiction if it has nationwide service of process. That's this Court's decision in Brown. If not, personal jurisdiction is governed by state law. And a federal court has no more jurisdiction than a court of general jurisdiction.  So in principle, Congress could provide for an alternative means of effecting service. Like if we were in Rule 4K2, then we'd have extraterritorial service is available. Yes, Your Honor. We can see that. But we're not. We're in 4K1 territory, right? And so that's the provisions of service. Exactly. And usually the way you get personal jurisdiction over a defendant is by serving process. Sometimes we waive service, but that doesn't mean that you can exercise jurisdiction over a defendant who's not amenable to service, right? Exactly, Your Honor. You can still describe, you know, who's a proper defendant. Those are two independent requirements. As this Court just recognized again a couple of weeks ago in the NLRB v. Universal Smart, there are three requirements. The first one is service of process or waiver of service of process. The second one is a statutory basis to exercise personal jurisdiction over the defendant. That is an independent requirement, and I think that's what the First Circuit skipped over and what plaintiffs are skipping over here. They're making the mistake that OmniCapital, the Supreme Court in OmniCapital corrected, said you need more than notice and a constitutional basis. You need a statutory authorization to exercise personal jurisdiction. And that's why this Court on many occasions, including the Brown case, has said that the two options as we look at it through Rule 4K1A, the two options are a federal statute that clearly provides personal jurisdiction, which it usually does through nationwide service of process, or you're in state law territory. And I don't think anybody would argue that a state court could ignore the 14th Amendment for later added plaintiffs or later added claims. But this Court has said, including in the NLRB case a couple of weeks ago, that all you get through 4K1A is exactly the same jurisdiction that a state court would have in that case. I think that flows directly from the text of Rule 4K1A itself, which says a defendant has to be subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located. But it also flows from the Supreme Court's decision in OmniCapital, which says that a statutory basis is always a requirement. If Your Honor is... So I guess the other side suggests that maybe the provision of the FLSA allowing another plaintiff to come in by filing a consent is a kind of Federal authorization to take on additional defendants, and we should understand it that way. So I think you would agree that if that provision did say that there's personal jurisdiction over anyone those parties sue when they come in, that would be a statutory basis. I agree, Your Honor. So what falls short of that in this case? Well, so Congress knows exactly how to provide additional personal jurisdiction. I direct Your Honors to the RICO statute, which is discussed in the Third Circuit's decision in Fisher, where Congress actually did set up different jurisdictional rules for different parties. It says that if one defendant has minimum contacts with the state, then it provides nationwide service of process for every other defendant joining the case. So Congress has a, you know, wide latitude to decide what the statutory basis is going to be. Here, there's no argument that there's any nationwide service of process provision, and there's no reference to personal jurisdiction as far as authorizing additional personal jurisdiction anywhere in the FLSA. In fact, in 216B, Section 216B, it specifically says that you can bring these actions in either Federal or State court of competent jurisdiction, giving no indication that there would be any difference between the rules in the State court or the Federal court where you can bring an FLSA action. It would be very easy for Congress to add there and say, if you're in Federal court, once you get past the original plaintiff, personal jurisdiction goes to the Fifth Amendment. But it didn't do that. And it would have been easy, and indeed perhaps at one time it was the law, that they could have authorized the plaintiff to bring a class action. Exactly. In which case the prevailing rule is that the class members wouldn't have to have impersonal jurisdiction. But in fact, as you pointed out earlier, the Portal to Portal Act specifically retracts that option and makes clearer that this is a joinder provision. Exactly, Your Honor. And then if you go forward, when modern Rule 23 was enacted in 1966, the advisory committee notes specifically say, this change does not affect FLSA collective opt-ins, because they knew from Congress's enactment of the Portal to Portal Act, it was important that each of these plaintiffs are bringing their own individual claims. Do you think it's right that all the members of a class action don't need to have personal jurisdiction over the defendant against whom they're asserting claims? So my client's position is that this Court doesn't have to answer that question to resolve this case. Both the Sixth and Seventh Circuits have gone that way, saying absent class members do not have to satisfy. But then both of those courts then went on in an FLSA case. Right, so it's possible to have a difference between the two. Exactly. But, you know, we've said that the class has to be defined in such a way that every class member has standing. So there needs to be subject matter jurisdiction. Yes. And so the thrust of the argument that you also need personal jurisdiction in order for the Court to proceed would imply that maybe that also applies to the class members. Maybe, Your Honor. And I guess I have my own personal views on this. I don't think my client needs to take a position in this case for you to resolve this case. So then I guess if you wanted to avoid deciding that question, what is different about the class mechanism and this mechanism that means that a decision here doesn't apply to that? Well, I think the Third Circuit's decision in Fisher is probably the clearest on this point. But in a class action, it can be viewed and has been by the Sixth and Seventh Circuits as creating an independent legal entity where the representative is the only one bringing a claim against the defendant, whereas here there's no way to view the FLSA in that language because it says each individual claimant commences its own action, his or her own action when she files a claim. I will note, Your Honor, that a panel of this Court is actually scheduled to resolve the question that you're raising, the Rule 23 question for Bristol-Myers Squibb in an interlocutory appeal. That's actually scheduled for March 26. So this Court will have— The argument is scheduled for March 26, you're saying? That's right, Your Honor. That's the In Re Actos antitrust litigation case. And so this Court will soon get to resolve that question and grant an interlocutory review on that question. But there's no need— I'm looking forward to it. No need to do it here. Thank you, Your Honor. All right. Thank you. Mr. Moriarty? Thank you, and may it please the Court. Opposing counsel is based on this fundamental misapprehension of what representative—representational litigation really means here. And if we take a closer look at the Scott v. Cipolli decision and what the Court then found about the representational nature of FLSA and then go back to Hoffman LaRoche, which was cited there, the discussion of representational litigation was not about whether FLSA collective action is a type of class action. The ruling there was actually based on what the Portal to Portal Act was trying to correct. And if you look at the historical authority, if you look at the congressional record, the evil that Congress was seeking to correct there was not to make collective action a non-class action or simply a joined-up. The real problem there was that there were workers who were being represented by non-workers, being represented by unions, being represented by union representatives, people who were not harmed, people who had not suffered or incurred violations of the Fair Labor Standards Act. And the historical record on that is very clear. And so as opposing counsel acknowledged, Congress knows how to confer jurisdiction to class members under those circumstances. And that's exactly what Congress did. Well, Mr. Moriarty, you would agree, would you not, that if two plaintiffs were both, oh, for example, built by some scheme that a person in New York, a New York citizen had perpetrated on them, and one of them lived in New York and one of them lived in New Jersey, the fact that Rule 20, I guess, of the Federal Rules of Civil Procedure, allows them to join their claims would not mean that there is now diversity jurisdiction if one of the plaintiffs shared the citizenship of the defendant, right? You have to satisfy, in a joinder case, you have to still satisfy subject matter and personal jurisdiction for each plaintiff, right? Well, that is true under Rule 20. So why is this different if what the Supreme Court and we have said is that this is distinct from a class action and is instead effectively a mass joinder device? You're saying we were wrong about that in Scott? Respectfully, Your Honor, yes. I'm saying that the other public— Well, first of all, the characterization in Scott about the representational nature of an FLSA collective action was dick-dumb. It was not specifically addressing the nature of the spurious class action mechanism that was incorporated into the FLSA in 1947. But a spurious class action is exactly a spurious class action, and that was at one time allowed and treated as a class action, and the modern Rule 23 no longer provides for that kind of class action, right? That's true, but we have to look at what the congressional intent was back in 1947, and very specifically, based on what Congress did at the time, it incorporated the spurious class action procedure and then Rule 23 going back to the promulgation of the Civil Rules in 1937. That was a class action mechanism based on the existence of a common issue of fact as to all members of the class. It incorporated the language at the time, the congressional intent there was clear to allow a representational form of class action litigation to proceed. Can I ask a different question, Mr. Moriarty? Why did you ask for the opt-in notice to only go to plaintiffs from New York, Connecticut, and Vermont? Wouldn't your theory permit anyone in the country who was similarly situated as a driver for Bimbo Bakeries to opt in? Well, this goes to the factual basis for the notice under the FLSA, and frankly, that is a factual question that I think that was glossed over by opposing counsel in the appellate briefing. The opposing counsel has implied that there isn't some sort of common nexus of fact that covers the distributors in those particular states, and plaintiffs take the position that there is a common nexus of fact, and that's part of the reason we can't have a nationwide. But it's not nationwide because there could be, or as far as we are concerned, we would have to assume that people driving, I don't know where exactly Bimbo Bakeries operates through the country, but in Iowa or California, are not governed by the same principles. But at any rate, you've only alleged that in New York, Vermont, and Connecticut, the rules and practices are the same. That's correct, Your Honor, and that's part of what we are grappling with here is that plaintiffs possess information showing that there are common distributorship agreements, that there are common practices with regard to major chain stores that are located and overlap through those states. We supplied a factual record to the court. That answers my question. But it is true, nevertheless, that if the same practices applied nationwide, your position would entail that people from, similarly situated people from the whole country could opt in. It's just that the record in this case does not at this point support that. That is correct, Your Honor. Okay, understood. Thank you. And that is part of what Congress was trying to address in 1947 when it adopted this class action procedure. You know, whether characterized as spurious or otherwise, the intention at the time was, you know, regardless of the use of the label party plaintiff or the use of the label action, it was incorporating a class action procedure, which, as opposing counsel agrees, But you agree that if you brought this claim in Vermont State Court, you wouldn't be able to add the out-of-state distributors. Well, our position, under the civil rules, under the federal civil rules, when we're considering the personal jurisdiction of the court, Rule 4 directs that the jurisdiction of the federal court be established through the service of a summons and complaint under Rule 4C. And when the collective action proceedings were alleged in this case, under the complaint, it gave people fair notice of the fact that this was going to be a federal collective action proceeding proceeding under the authority of a federal court where personal jurisdiction was established. It's the nature of the claim that allows you to bring in other defendants or out-of-state defendants. It's the nature of the forum that the federal court can reach to include other defendants, right? That's your position? That's our position based on what the First Circuit determined in the Waters case. Why would that be? Because if, in fact, the nature of the claim is representative, shouldn't the same thing apply in state and federal courts? What is the real reason why you could bring in the other defendants in federal court but not in state court? Well, we don't take any specific position on that. But the notion there is that personal jurisdiction is still established in the same way based on the service of the summons and complaint at the outset of the case. And so that's going to be the same sort of reason. Especially because we're operating under Rule 4K1, which is following the service rules of the state. Why wouldn't the same result apply in a state court action? It would be the same, Your Honor. Oh, wait, you're saying that if you brought this claim in state court, you could add the out-of-state defendants. It's the same principles for service that govern. That's correct. So what's going on in Bristol-Myers Squibb? Bristol-Myers Squibb is a mass action where all of the plaintiffs have individual claims. It is not a class action or a collective action, which we take the position that this is in the nature of a class action where absent class members do not need to separately establish personal jurisdiction. And it's the exact same scenario here. Okay, you're not saying that it's a difference about the forum. You're saying it's a difference in terms of the action. So if we thought that this was not a representative action but it was a jointer mechanism, then you agree that you wouldn't be able to add the other defendants. You're just saying it is a representative action. We are saying it is a representative action. Your entire argument, as I understand it, rests on our agreeing with you that this is a representative action as opposed to some other type of action. Correct. If you lose on that, then you can't prevail on appeal. We believe that that's a critical piece here, that if these opt-ins, people who are proceeding, who have a named plaintiff who's proceeding in and on their behalf. Can I ask you a separate question? And maybe this is too general, but with respect to the possible deported plaintiffs in New York and Connecticut, there are other options, correct, practically speaking? Well, that goes to what Congress intended through a collective action procedure, which is to say Congress wanted to have a remedial procedure where similarly situated workers, uniformly harmed by illegal wage payment practices, would have a common procedure for obtaining relief. And what we have here is a situation that would ultimately fracture the collective action procedure and have substantially similar proceedings occurring in multiple different jurisdictions, multiple different state jurisdictions. They could all be in the same jurisdiction if it was a jurisdiction where the defendant was at home, right? Isn't that right? Well, I disagree with that, Your Honor, because in a situation like this one, we don't necessarily know whether the unlawful wage practices are happening in the home state of the defendants or not. That wouldn't matter. There would be in personam jurisdiction for a Vermont plaintiff to sue the defendant where it lives based on the way they conducted themselves in Vermont. It would be general jurisdiction. It would be general jurisdiction. So they could join, and if you're right, that the people in Connecticut and New York are subject to the same agreements, they could join too. And that in itself, doesn't that in itself defeat the application of Rule 4K2? Because one of the requirements there is that the defendant is not subject to jurisdiction in any state's court of general jurisdiction. I think the challenge there on a practical level is that Congress intended that workers be able to proceed collectively, and by forcing them to litigate in that distant forum, it's going to substantially undermine the efficacy of the collective action procedure. It's not very much further, certainly for New York residents who would be just as close to Pennsylvania as they are to Vermont. They border us. You know, Pennsylvania does border us. That's a judicial notice. Yeah, I think so. Well, anyway, never mind. Well, just to be clear, I mean, I didn't hear the other side say that the Constitution fixes this rule. I heard them say that Congress could provide a different rule of personal jurisdiction, but it didn't do it here. So it's not like it's... So it wouldn't be fixed for all time. Congress certainly could do what you're saying. The question we have to decide is whether it already has. I think that's correct, Your Honor, and I think that does lead to the question of what did Congress actually intend when it enacted the Portal to Portal Act in 1947. Was it truly trying to provide this sort of collective proceeding, this collective procedure that would allow groups of workers harmed in a simpler way? But you see, it does allow this kind of procedure, and that's undisputed here. This procedure would permit the opt-in of everybody in Vermont, for sure, right? So the existence of, you know, the rule that the defendant is advocating here would not render nugatory the... whatever we want to call it, the mass joinder procedure or the representative procedure or the collective action procedure. It still has application for any plaintiff who can establish in personam jurisdiction over the defendant. And it seems to me in Pennsylvania or Delaware, that could be, assuming that they are similarly situated and the same procedures apply, any driver for the defendant in the entire United States. And in a particular other state, it would allow that procedure with respect to anyone who can establish in personam jurisdiction, which would be present and consistent with the 14th Amendment for how the defendant treats people when it operates in Vermont or New York or Connecticut for actions brought there. And so I don't see why you would say that the intent of Congress in creating this form of representative action would be somehow totally defeated by the defendant's argument here. Well, I would point the Court to a couple different resources on that specific point. First of all, if this Court were to look at what Professor Moore was saying in his 1937 Law Review article about the intent underlying spurious class action, the notion there, the fundamental notion there, is that you would have a representative litigation where there would be a uniform adjudication on behalf of the whole. And if you look at the spurious class action rule in the original Rules of Civil Procedure, it discusses a common question of law or fact affecting the several rights and a common relief is sought. And so when we talk about fracturing collective actions state by state, we are defeating that whole notion of there being a uniform adjudication of the rights of the whole. So that's precisely the reason why this does need to be viewed as a uniform civil proceeding as opposed to separate proceedings in separate states. Thank you very much. I think we got your argument. Mr. Nelson, you reserve two minutes for rebuttal. Thank you, Your Honors. Just to start on that last point there, I think, as Judge Lynch was pointing out, nationwide collective actions are still allowed in Delaware and Pennsylvania where the defendants are at home, and statewide collective actions are allowed anywhere that there would be personal jurisdiction. The other thing I'll point out is, as Judge Sutton said in his majority decision for the Sixth Circuit in the Candidate case, as a matter of historical practice, most nationwide collective actions have been brought where there's general jurisdiction. So actually, this rule fractures nothing and changes nothing about historical practice. But the thing that matters is what Congress did in the Portal to Portal Act in 1947. So just on this notion of representative or not, opposing counsel referenced the Hoffman case where it said we don't want unions to represent employees anymore. The very next sentence said the other purpose of the Portal to Portal Act, which is that we don't want any absent class members. We want people that have to opt in in order to initiate their own claims. That's actually the very next sentence in the Hoffman case. The other thing I'll say about the Scott case on Joinder is Scott actually quoted the Supreme Court in Genesis Healthcare saying that the FLSA collective action is a Joinder mechanism. So to disagree with that, you'd have to overturn Scott, which this panel can't do under precedent. But you'd also have to disagree with the Supreme Court in Genesis Healthcare. Which we can't do even in Bank. Can't do even on Bank. That's right, Your Honor. And then a couple of final points. One on the spurious class actions. I'll just point out that the case they rely on is the Third Circuit case in the Knepper, which was written by Judge Sirica. Judge Sirica then wrote the Fisher case explaining why the analogy to spurious class actions does not help plaintiffs. It hurts them. Because spurious class actions were fake class actions. That's what the word spurious means. And they were only an invitation to intervene, not an actual representative action. Finally, I'll just say that we agree that we disagree on the merits. We don't think that they have a common nexus of facts here. But that's not the issue before this Court. The issue before this Court is personal jurisdiction. And we think that there is only personal jurisdiction over Vermont opt-ins. Thank you very much. Thank you, Your Honor. Rule of reserve decision.